IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Rosalee M. Wise, | : | |
| Plaintiff | : | Civil Action 2:09-cv-00355 |
| v. | : | Judge Marbley |
| Michael J. Astrue, Commissioner of Social Security, | : | Magistrate Judge Abel |
| | : | |
| Defendant | | |
| | : | |

**ORDER**

This matter is before the Court on defendant's May 11, 2010 objections to Magistrate Judge Abel's April 19, 2010 Report and Recommendation which found that the administrative law judge failed to fairly characterize the treatment records of Dr. O'Connor and recommended remand to the Commissioner for the administrative law judge to obtain the services of a medical expert to assist the judge in evaluating what weight should be given to the opinions of Drs. O'Connor and Griffith based on the factors outlined in Social Security Ruling 96-2p.

The defendant Commissioner argues that the administrative law judge properly evaluated Dr. O'Conner's treatment notes, which did not document significant treatment for depression, and appropriately exercised his discretion when he did not seek the assistance of a medical expert.

The Magistrate Judge analyzed the administrative law judge's rejection of Dr. O'Connor's and Griffith's opinions that plaintiff was disabled by her psychiatric impairment as follows:

> Failure to obtain a medical expert. The primary function of a medical expert is to explain medical terms and the findings in medical reports in more complex cases in terms that the administrative law judge, a who is not a medical professional, may understand. *See, Richardson v. Perales,* 402 U.S. 389, 408 (1972).  The Commissioner's regulations provide that an administrative law judge "may also ask for and consider opinions from medical experts on the nature and severity of [the claimant's] impairment(s) and on whether [the] impairment(s) equals the requirements of any impairment listed in appendix 1 to this subpart."  20 C.F.R. § 404,1527(f)(2)(iii).  The Commissioner's operations manual indicates that it is within the administrative law judge's discretion whether to seek the assistance of a medical expert.  HALLEX I-2-5-32 (September 28, 2005).  "The primary reason an ALJ may obtain ME opinion is to gain information which will help him or her evaluate the medical evidence in a case, and determine whether the claimant is disabled or blind."  *Id.*  The operations manual indicates that an administrative law judge "may need to obtain an ME's opinion" in the following circumstances:
> - the ALJ is determining whether a claimant's impairment(s) meets a listed impairment(s);
> - the ALJ is determining the usual dosage and effect of drugs and other forms of therapy;
> - the ALJ is assessing a claimant's failure to follow prescribed treatment;
> - the ALJ is determining the degree of severity of a claimant's physical or mental impairment;
> - the ALJ has reasonable doubt about the adequacy of the medical record in a case, and believes that an ME may be able to suggest additional relevant evidence;
> - the medical evidence is conflicting or confusing, and the ALJ believes an ME may be able to clarify and explain the evidence or help resolve a conflict;
> - the significance of clinical or laboratory findings in the record is not clear, and the ALJ believes an ME may be able to explain the findings and assist the ALJ in assessing their clinical significance;

- the ALJ is determining the claimant's residual functional capacity, *e.g.*, the ALJ may ask the ME to explain or clarify the claimant's functional limitations and abilities as established by the medical evidence of record;
- the ALJ has a question about the etiology or course of a disease and how it may affect the claimant's ability to engage in work activities at pertinent points in time, *e.g.*, the ALJ may ask the ME to explain the nature of an impairment and identify any medically contraindicated activities; or
- the ALJ desires expert medical opinion regarding the onset of an impairment.

HALLEX I-2-5-34 (September 28, 2005). An administrative law judge's determination of whether a medical expert is necessary is inherently a discretionary decision. *Nebra A. Simpson v. Commissioner of Social Security*, 2009 WL 2628355 (6th Cir. August 27, 2009)(unreported) at *8. An administrative law judge abuses his discretion only when the testimony of a medical expert is "required for the discharge of the ALJ's duty to conduct a full inquiry into the claimant's allegations. *See* 20 C.F.R. § 416.1444." *Haywood v. Sullivan,* 888 F.2d 1463, 1467-68 (5th Cir. 1989).

    The administrative law judge stated:

> I find that a supplemental hearing is not warranted because Dr. Griffith's medical records do not support such finding for reasons discussed above. There is extremely minimal objective evidence of "severe" depression at all as also discussed above. The date last insured is December 2006. Due to the lack of substantial, objective evidence of serious depression, let alone disability, a Medical Expert's opinion is unwarranted. Whether evidence is objective or subjective is a call that can be made, in fact, must be made by the undersigned. Any Medical Expert opinion would be too speculative given the lack of substantial evidence to support a finding of disability.

(R. 31.) The administrative law judge failed to discuss whether a medical expert would have assisted in assessing Dr. O'Connor's treatment notes. With respect to Dr. O'Connor's treatment of plaintiff, the administrative law judge asserts that '[t]hough the claimant saw him quite regularly, there was no significant, if any, mention of depression until 2003 when his records show 'f/u on depression'(Exhibit 11F at 28-29). There was no actual discussion of depression or even report of symptoms or any observations by the doctor at that time. He just decided to try Wellbutrin." (R. 23-24.) This is not a fair characterization of Dr. O'Connor's treatment notes. The administrative law judge neglects to mention that as early as

November 2001, Wise had started describing symptoms indicative of depression. She reported severe fatigue, weight gain, and difficulty sleeping. Although she denied feelings of depression, her reported symptoms caused Dr. O'Connor to investigate further and check her thyroid. (R. 225-26.) In December 2001, Wise reported a loss of interest in activities in addition to the symptoms she had reported earlier. Apparently these symptoms could not be attributed to her thyroid, and Dr. O'Connor prescribed hormone therapy despite his statement that he "think[s] this is classic depression rather than perimenopause." (R. 225.) Dr. O'Connor apparently prescribed an anti-depressant at this time because at the next appointment in March 2002, the treatment notes state "no change in Effexor." (R. 225.) Furthermore, based on concerns about plaintiff's memory, Dr. O'Connor referred plaintiff for an MRI in June 2002. Sometime in 2003, Dr. O'Connor referred Wise to Dr. Drake for treatment of her depression.

    Here, Dr. O'Connor attempted several treatment options to determine the etiology of Wise's symptoms before ultimately concluding that she suffered from depression. He referred her for an MRI and to two different doctors for treatment of her depression. The administrative law judge appears to not have recognized the significance of Dr. O'Connor's efforts to diagnose and treat her depression. Consequently, a medical expert would have provided valuable assistance in evaluating the record and determining whether Wise's impairment meets a listed impairment.

    <u>Treating Doctors' Opinions</u>.  Plaintiff argues that the Administrative Law Judge erred in rejecting the opinions of Drs. O'Connor and Griffith that plaintiff was unable to work because of her mental impairment.

. . .

    <u>Treating Doctor: Discussion</u>.  The administrative law judge rejected Dr. O'Connor's opinion:

> Dr. O'Connor's assessment is not accepted for multiple reasons. While a treating source, he is not a mental health professional and not an expert on issues of depression. He stopped prescribing medication when she began seeing a psychiatrist, Dr. Griffith, in November 2004. His medical records have been reviewed in considerable detail above and clearly show that he made no objective observations of the claimant other than to describe her presentation and mood as "pleasant" at all times. There was never any documented discussion of depression. In fact the patient did not regularly any problems until mid 2004 with indication that she was

4

>   involved in a workers' compensation or workers' retirement
>   disability claim with her former employer.
>      Dr. O'Connor did not document in his records any
>   discussions or reports by the claimant's psychiatrist, Dr.
>   Griffith. He mainly just appears to accept the patient's,
>   actually mostly her husband's allegations. Accordingly, no
>   controlling weight is given to Dr. O'Connor's assessment. In
>   fact, no significant weight at all is given to this assessment
>   because there is nothing at all in his records showing
>   objective support for the serious incapacity that he indicates
>   in his May 2006 assessment. A review of his records shows
>   that she invariably denied suicidal thoughts, psychosis, and
>   many other psychological symptoms.

(R. 25.) With respect to Dr. Griffith, the administrative law judge stated:
>   Dr. Griffith, while a treating source for a time, rather
>   minimally at that in terms of any in-depth treatment
>   relationship, does not show any evidence of concern over
>   serious psychiatric symptoms in her visits notes and her
>   mental status exams were mostly normal. For this and
>   multiple reasons discussed above in terms of evidence
>   refuting many of her allegations (actually just repeating the
>   client's and her husband's allegations), her assessment and
>   opinion of disability cannot be accepted as supported by
>   substantial objective evidence. Her opinions are also not
>   consistent with the medical evidence as a whole, which
>   shows lack of even a truly severe depressive disorder at any
>   time in the early part of the record from the alleged onset
>   date of November 2001 to mid to late 2004 when she began
>   alleging greater degree of symptoms related to her workers'
>   compensation medical disability claim.

(R. 30.)

   Because the administrative law judge failed to fairly characterize the treatment records of Dr. O'Connor and would have benefitted from the assistance of a medical expert, I will refrain from determining whether the administrative law judge properly assessed the opinions of Wise's treating doctors under Social Security Ruling 96-2p. On remand, a medical expert should assist the administrative law judge in evaluating what weight should be given to the opinions of Drs. O'Connor and Griffith based on the factors outlined in Social Security Ruling 96-2p.

Doc. 12, at pp. 15-19 and 24-26.

Decision. The Commissioner selects out a few bits of information from Dr. O'Connor's treatment records, such as Wise's early denial that she was depressed (doc. 225-26), and argues that the Magistrate Judge erred in his analysis. The Commissioner also asserts that Dr. O'Connor doesn't mention depression between February 2002 and August 2003.

The Report and Recommendation fairly summarizes Dr. O'Connor's treatment notes:

> Christopher O'Connor, M.D. Dr. O'Connor, a family physician, began treating plaintiff in 2001 for several complaints, including depression. A November 6, 2001 treatment note indicates that Wise was experiencing severe fatigue and weight gain without any change in her diet. She reported no feelings of depression. She had trouble sleeping. Dr. O'Connor wanted to check her thyroid functioning. (R. 225-26.) On December 11, 2001, Wise continued to report fatigue, trouble sleeping, increased weight, and loss of interest in activities. (R. 225.)
> On February 11, 2002, Dr. O'Connor noted that plaintiff had been sleeping excessively. She had poor, restless sleep. She reported fatigue. Her interest was down. She had lost her job. She rocked back and forth at the kitchen table for hours. She had poor concentration and increased appetite. Dr. O'Connor diagnosed depression. (R. 225.) On March 11, 2002, Wise exhibited some improvement. She still had poor energy. Her mood was somewhat improved. Her interest in other activities was either improved or no different. (R. 224.) In April, Wise continued to report fatigue and poor energy level. In May, Wise was "doing fair." She was less grouchy and moody. (R. 224.)
> On June 10, 2002, Dr. O'Connor noted that plaintiff still had some trouble with her memory, and Zoloft was not making a difference. (R. 223.) She seemed to be having "personality shifts." (R. 224.) On June 24, 2002, plaintiff was seen to follow up on her depression and MRI results. (R. 223.) Dr. O'Connor ordered a MRI of the brain based on Wise's report of memory deterioration. On June 18, 2002, the MRI was performed. Wise

6

> had a Chiari I malformation and occasional nonspecific white matter signal alterations. (R. 139-40.)
>
> On August 4, 2003, Dr. O'Connor noted that the referral he made to Dr. Drake for plaintiff's depression was unsuccessful. (R. 220.) He changed her medication to Wellbutrin. (R. 221.)
>
> On June 25, 2004, Dr. O'Connor completed a questionnaire for the Bureau of Disability Determination. (R. 212-14.) Dr. O'Connor indicated that Wise had flat affect and incongruent thoughts. She exhibited poor concentration, poor memory, confusion, and the inability to tolerate frustration. He opined that she was unable to complete a full workday. Dr. O'Connor noted that her self-care was poor at times, and her interest in activities had decreased. With respect to social interaction, Wise had poor ability to interact due to her flat affect and depression. She was described as introverted. Her symptoms had been present for the past four years, and they only partially responded to treatment. Her ability to tolerate stress was poor. (R. 214.)
>
> On September 29, 2004, Wise's husband reported that he did not believe that plaintiff was doing well on her current medication. Wise reported that she felt that she was tolerating the medication. (R. 209.) On October 5, 2004, Wise was not doing well. She complained that her memory was "off" lately. She was depressed and felt overwhelmed most of the time. She also complained of poor concentration. (R. 208.) Wise made similar complaints on October 27, 2004. (R. 207.)
>
> In December 2005, Wise was doing well on her current medication for depression. (R. 204, 201.)  On December 20, 2005, Wise complained of psychomotor agitation and impaired memory. (R. 201.)
>
> On May 17, 2006, Dr. O'Connor completed a questionnaire as to Wise's mental residual functional capacity. Dr. O'Connor concluded that Wise had marked and extreme limitations with social interaction. She had marked limitations in the ability to sustain concentration and persistence. With adaption, Wise was markedly limited in all areas other than being extremely limited in her ability to tolerate customary work pressures. Dr. O'Connor opined that Wise's condition would likely deteriorate if she was placed under stress, particularly the stress of a job. (R. 213-14.)

Doc. 12, at pp. 4-6.

Upon *de novo* review in accordance with the provisions of 28 U.S.C. §636(b)(1)(B), the Court **ADOPTS** the Report and Recommendation.  The Magistrate Judge's analysis

is supported by Dr. O'Connor's office notes as is his legal finding that the administrative law judge did not fairly characterize Dr. O'Connor's treatment records and that on remand the administrative law judge should retain the assistance of a medical expert to assist him in evaluating Dr. O'Connor's findings and opinion on the issue of disability.

This case is **REMANDED** to the Commissioner for further proceedings consistent with the April 19, 2010 Report and Recommendation.


    s/Algenon L. Marbley
Algenon L. Marbley, Judge
United States District Court